NILS WARREN, Plaintiff, Pro Se.

v.

NELNET SERVICING, LLC and MIGUEL S. CARDONA, Secretary of Education,
United States Department of Education

Case No.: 6:22-cv-02432-WWB-LHP

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION

Defendants. _____/

**CASE # 6:22-CV-02432**

**SECOND AMENDED MOTION**

**Comes now**, before the Honorable Middle District Federal Court, Plaintiff brings the following case:

Plaintiff, ProSe, wishes to amend the original motion, and complaint as filed in this case to the following .

**VERIFIED COMPLAINT:**

Nils P. Warren, and Individual, acting as Plaintiff, Pro Se, brings the following verified complaint against NELNET SERVICING and The

FEDERAL DEPARTMENT OF EDUCATION, Honorable MIGUEL CARDONA, as its Secretary.

**MOTION TO AMEND ORIGINAL COMPLAINT:**

Plaintiff contends that none of the basic facts as asserted prior have changed, but seeks the indulgence of this court to allow the original motion's language to be amended as follows. Plaintiff has provided a Certificate of Conference in regard to this amended motion, as required under Local Rule, 3.01(g)

**GENERAL ALLEGATIONS :**

1.- Defendants, are: An OMAHA, NEBRASKA based corporation, as well as A department of the FEDERAL Government, with an appointed Secretary as its Head.

2. Liability in this case may well be both joint and severable between the two defendants.

3. Venue is proper in the United States Court, Middle District, located in Orlando, Florida.

4.-   Plaintiff alleges that , Nelnet Servicing, AKA Nelnet Student Loan Servicing , Herein :(NELNET) On or about August 1, 2016, did , in fact consolidate existing LOAN Principal, with accrued interest, without consent, request, or approval of PLAINTIFF.  (Reference EXHIBIT A, original Complaint) This is born out through NELNET's own documentation.

5- This forced consolidation, egregiously ,and  deliberately, breached the terms of plaintiff's then existing contract., with regard to Plaintiffs "Student Loan", (HEREIN: LOAN).

6-That this forced consolidation occurred, is historical fact.

7- The situation that NELNET has created, has violated the fact and spirit of this contract for the LOAN, by creating a situation for their own enrichment, which creates an environment in which Plaintiff is in fact, effectively paying

something likely exceeding 18% interest, on a loan with specific (Original) terms of, 9.25%.

8-That such action has also created a situation where plaintiff is being forced to pay interest upon interest, is capricious, and usurious (interest estimated at 18.5%) .And, it is thus, self perpetuating .

9-Plaintiff further asserts that DEFENDANT(S), in fact , engaged in a system of misdirection, and obfuscation in creating this situation, , which benefits solely , the DEFENDANT, specifically, NELNET.  So far as plaintiff can determine any such profits go into NELNET's coffers, Not the taxpayer, and not the the DOE, thus the move as described , does benefit, solely, NELNET.

10.- Defendant's behavior is in complete opposition to the understood concept of what a student loan servicer should be: An Advocate, and advisor , who should aid  "Borrowers" in paying off , and managing their "Loans". Creating situations  which unethically enrich Defiant NELNET, is the opposite of  that understood purpose.

11- Defendant did, deliberately create an avaricious situation, through such deceptive, and unethical practices, which solely benefit and enrichen Defendants.

12. Defendants (BOTH) have proven by verbal, and written communication, a total unwillingness to right this wrong, in any practical, and useable manner. (Reference EXHIBIT A, original complaint)

13. NELNET claims that they do not have the power to reverse the consolidation or correct the situation to Plaintiff's satisfaction, YET, they clearly had the authority to force the consolidation, and in fact even to this day are consolidating interest with principal as it accrues, on an ongoing basis. SO, from Plaintiff's standpoint this claim on NELNET's part makes no sense. Thus why Plaintiff seeks relief.

**Plaintiff seeks this specific remedy** : Plaintiff wants all interest which was forcibly consolidated in 2016, and that which has double-compounded since then to be stricken down, and commuted.  Plaintiff does

not , nor has plaintiff , ever expressed contest to the original, ACTUAL loan principal of $20,000.

Even if Plaintiff suddenly came into possession of $80,000 to magically, "pay off" said loan, as it currently exists.in NELNET's system.; Plaintiff can not comprehend, what the benefit of paying $60,000 in excessive financial burden would hold in gain for Plaintiff. There is no tangible thing to be gained for that money. It equates to the price of a very nice automobile. The overall unilateral and deceptive nature of NELNET's actions, from Plaintiff's viewpoint, is a greater part of the problem extant within the "Student Loan Industry", as such it is.

**As to claim against shared party in the suit:**

NELNET, cannot do much, with regard to loan modifications, or alterations, without permission, and, or,at the least, involvement of the Federal Department of Education, with the Honorable Miguel Cardona, as Secretary. (HEREIN, DOE).

As a simplified illustration, If a jet airliner has an accident, even if the Co-Pilot, was at the controls and ran over your car, one could theoretically sue the co-pilot, however ,the Captain is in actual, legal commend of the plane, as FDR would say "The Buck stops with that Captain", in this example, the "Captain" is the DOE.

Absent a thorough revelation of the exact legal and contractual relationship that exists between NELNET and DOE, it is difficult, if not, impossible for Plaintiff to know where the precise dividing line , is drawn, The liability in this case is at times a joint liability, and , in some instance, may well be severable. Naturally, NELNET would be loathe to explain the details of this relationship. In communications with either party, they both often try to foist the blame, on the other party. It is a murky, situation comprised of obfuscation, and misdirection.

**The historical facts:**

On or about August 1, 2016, Nelnet Servicing, AKA Nelnet Student Loan Servicing , Herein :(NELNET). Did in fact Forcibly , and without

Plaintiff's consent, Consolidate Plaintiff 's Actual, existing loan principal, of approximately $20,000, to the accused interest at that time. Shortly thereafter, Plaintiff became aware of this situation, and has been asking repeatedly to have this consolidation reversed, and removed. NELNET, has refused. As seen in attached exhibit in evidence as submitted in the original complaint, NELENT, as recently as 2021, has again refused to undo this tort. That NENET did commit this action is without dispute.Their own documentation as supplied in EXHIBIT A, of the original complaint, is very clear in this fact. What is also beyond dispute is the simple fact that it has resulted in a potential for unethical, and excessive profit on NELNET's part. Plaintiff did not then , or now , desire this consolidation. It has created a self perpetuating endless spiral of untenable interest on interest, that, in its current state, will , in fact never , be  possible to pay off , short of some unforeseen , and quite imaginary  windfall, on the part of plaintiff.

The Historical facts  facts in this case are : Beginning about January of 1985, Plaintiff, in pursuit of an undergraduate degree while attending the University of Central Florida, Took out the first of a series of student loans, (Then Called Stafford Loans), over a number of years, with the last such loan occurring in approximately 1996. On March 19,1997, plaintiff had

these dozen, or so, loans consolidated into one single loan, totaling, approximately $21,899 , at that time.    Payments were made under various arrangements over a period of years.. On August 1, 2016, NELNET, Without consulting plaintiff , in any way, forcibly consolidated the remaining balance, with the accrued interest, which had accrued as the result of a series of forbearances and deferrals, such that the new "consolidated" loan balance , thus, became some $40,000. The end result, is that the situation created a condition whereby Interest was being capitalized on top of existing interest.

Plaintiff , upon discovering what had been done , without plaintiff's consent, has made multiple attempts to have this undone and removed . Plaintiff was informed directly by NELNET, that the consolidation was done by using a loophole in the law, which allowed for "electronic signatures" . Electronic signature provisions within the law are , and, or , were created to aid with online sales, and certain types of credit card or other transactions. It was also intended that both parties are in agreement of any such  transaction, and was never intended to be utilized in a unilateral fashion, as was the very clear  abuse of said signatory concept, as is within this case.

If this is allowed to be a continued behavior, the precedent that it sets will, in fact create a "WIld West" situation within the world of financial crimes

Sic:

What is to stop some hacker from claiming that he had an "electronic signature " from "The Bank" authorizing he, she , or it, to move the Ten Million in bitcoin to their account? Where does this sort of abuse stop?

That plaintiff never requested this consolidation, nor would any sensible, " reasonable person" is an absolute fact.. The end result makes absolutely no sense, whatsoever. The only party which benefits from this , is NELNET, which has , in fact ,created, a , self-serving , extremely usurious  situation.. If plaintiff were to try and pay this ridiculous situation off, based on the standard payment of approximately $925 per month ( absent any adjustments for IDR programs, etc), it would take in excess of 100 years to pay this off, because of the self enriching interest upon interest scheme. Thus: even with 12 payments at $925, for a total of

$11,100 per year, the total balance $80,000(at present) would go down only about $400 or so at the end of those twelve months. It is improper, unfair, unethical, and very, untenable. If any number of REPAYE, IDR, Or other similar type programs, are to be used, the time required to pay this off, works out to something like 160 to 200 years. This will never be paid off, that much is obvious.

**PLAINTIFF ASSERTS:**

**COUNT I**   Plaintiff asserts that NELNET and DOE did, in fact, unilaterally Use Plaintiff's "Electronic " signature against plaintiff's will, and without consent of plaintiff, in any way, whatsoever. If there was a processing error, the error is wholly defendant's responsibility. The only time Defendant has used , or agreed to any sort of electronic signature, will have been to possibly process a SINGLE payment, or similar transaction. Such transaction will have been authorized for a single use, and occurrence, only, and at no time was assumed to be a blanket authorization.

**COUNT II:** Plaintiff further asserts that NELNET & DOE have abused the spirit, and intent of any such proviso in the laws regarding electronic signature, and electronic transactions. Agin, while NELNET did commit the action, Plaintiff, absent a thorough examination of the contract, as such that exists between NELNET and DOE, can not, at present, determine who has control of what decision, at what time. If necessary, Plaintiff, will request this documentation in discovery.

**COUNT III** Plaintiff asserts, that by creating an untenable situation, within the Interest upon interest scheme, as perpetrated by NELNET & DOE, that NELNET and DOE, have also, in fact breached the terms of any promissory note ever signed by plaintiff, at any time. Plaintiff signed a promissory note in the original 1997 consolidation at 9.25%. Current, effective interest rate, direct because of the actual, interest -on-interest scheme is around 18.5%. This puts the loan squarely in the column of **Usurious.**

**COUNT IV.** Plaintiff contends that Defendants have created a situation that presents an unfair and onerous burden, which in no way, even begins to

aid plaintiff in actually "servicing", or paying off the loan. It is, in fact , a self sustaining overburden of double compounded interest, that by its nature cannot be paid off. Short of an actual financial miracle. It presents a situation that Sisyphus of Greek Mythology would surely recognize.This reaffirms the deceptive, and avaricious nature of NELNET's Behavior.

## CASE LAW CITATIONS

**In NELSON V GREAT LAKES LOAN SERVICING**, the Seventh Circuit, US Court of Appeals stated, among other language:

*Many of Nelson's specific claims allege that Great Lakes misled her and other class members by making affirmative misrepresentations—about its expertise and its devotion to borrowers' best interests, and in recommending forbearance as the best option for borrowers in financial trouble. The dis- trict court found these claims were preempted by recasting them as omissions, such that state law would implicitly im- pose on Great Lakes some disclosure requirements in addi- tion to those imposed by federal law. Nelson, 2017 WL 6501919, at \*5.*

*We respectfully disagree with that reasoning. At least some of Nelson's claims of affirmative deception do not nec- essarily imply any additional disclosure requirements at all. She is complaining about at least some deceptive statements that Great Lakes chose to make voluntarily, not because fed- eral law required them. Great Lakes could have avoided these claims by remaining silent. State law could impose liability on these affirmative misrepresentations without imposing addi- tional disclosure requirements on Great Lakes, and thus avoid preemption under § 1098g. See Altria Group, Inc. v. Good, 555 U.S. 70, 79–82 (2008) (state-law fraud claims for false affirma- tive representations in cigarette advertising were not preempted by federal law).*

*18 No. 18-1531*

*One foundation of the law of fraud and negligent misrep- resentation is the difference between an affirmative misrepre- sentation and a failure to disclose. The common law tort of fraud ordinarily requires a deliberately false statement of ma- terial fact. E.g., Davis v. G.N. Mortgage Corp., 396 F.3d 869, 881– 82 (7th Cir. 2005); Connick v. Suzuki Motor Co., 675 N.E.2d 584, 591 (Ill. 1996); Siegel v. Levy Organization Development Co., 607 N.E.2d 194, 198 (Ill. 1992). An omission or failure to disclose, on the other*

*hand, will not support a common law fraud claim but may be actionable as constructive fraud or fraudulent con- cealment if the defendant was under a particular duty to speak, which may stem from a fiduciary duty or a similar re- lationship of trust and confidence. See Joyce v. Morgan Stanley & Co., 538 F.3d 797, 800 (7th Cir. 2008) (Illinois law); Connick, 675 N.E.2d at 593; Restatement (Second) of Torts § 551 (1977).*

*When a plaintiff alleges a defendant's actionable failure to disclose, it is easy to understand how that claim implies a "disclosure requirement," to use the language of § 1098g. But when a plaintiff alleges a defendant's false affirmative mis- representation, recasting the claim as imposing a "disclosure requirement" is not necessary and may not even be appropri- ate. If the claim is that the defendant said something false that it was not required to say in the first place, the claim does not necessarily imply a disclosure requirement. The defendant could have complied with its legal obligations, under the plaintiff's theory, by merely refraining from making the false affirmative misrepresentation about its expertise, its work in borrowers' best interests, and its recommendation of forbear- ance to most distressed borrowers.*

*In this case, the district court relied upon a broad reading of the Ninth Circuit's opinion in Chae v. SLM Corp., 593 F.3d*

*No. 18-1531 19*

*936 (9th Cir. 2010), to treat Nelson's complaints about affirm- ative misrepresentations as implying some additional disclo- sure requirements. While Chae may apply to some of Nelson's claims, it was a mistake to read Chae so broadly. The plaintiffs in Chae complained about the supposed failures to disclose key information in specific ways, such as loan terms and re- payment requirements. Since the defendant was required to disclose that information by federal law and had disclosed it in ways permitted by federal law, the Ninth Circuit found that the plaintiffs were implicitly seeking to impose additional dis- closure requirements under state law. We do not disagree with the Ninth Circuit's reasoning, but Chae itself made clear that § 1098g would not extend to other sorts of disclosures to borrowers. Chae limited the reach of some of its broader lan- guage by holding that other state-law claims, focusing on the "use of fraudulent and deceptive practices apart from the bill- ing statements," are not preempted by § 1098g. 593 F.3d at 943 (emphasis added).*

*That limitation applies to this case, or at least to parts of it. The broad language in Chae simply does not extend to Nel- son's claims about Great Lakes' affirmative misrepresenta- tions in counseling, where Great Lakes could have avoided liability under state law by remaining silent (or telling the truth) on certain topics. On this theory, plaintiff may proceed on her claims based on affirmative misrepresentations, as dis- tinct from those that require proof that defendant failed to dis- close information.*

**IN Pennsylvania V Navient, The court stated in its ruling:**

In Pennsylvania Attorney General Josh Shapiro's suit, the Third Circuit Court of Appeals rejected Navient's argument that the suit should be dismissed. The Court found that many of the suit's claims regarding Navient's alleged affirmative misrepresentations to student loan borrowers were not pre-empted by federal law. The ruling allows the suit to continue against Navient. "We hold that the plain language of the Consumer Protection Act permits the Commonwealth's concurrent action," the Court wrote in its unanimous decision.

These cases are but two of a number of such, which have already been decided by the court of appeals, and other higher courts. The Navient case , is certainly quite well known.  Plaintiff , based on dialog with a variety of student loan reform groups, and other related forums,

has found that plaintiffs situation is not unique, and it is plaintiff's contention, that NELNET and DEO's behavior falls squarely within the case law as cited.

**Request for relief:** Plaintiff seeks the immediate reversal and commutation of any and all interest applied to the original loan principal. That original loan principal is approximately $20,000. Removing the $60,000 in what plaintiff considers to be usurious, and fraudulent interest, in actuality, costs the taxpayers nothing, as it s completely intangible, "virtual" money.

**Injunctive relief:** Plaintiff seeks a temporary injunction, barring NELNET and DOE from using such electronic signatures for any reason, until such time as a thorough investigation into the nature of the precise business relationship between NELNET and DOE can be completed.

**REFERENCES:**

Exhibit A, as submitted in original complaint filing.

EXHIBIT B: Ongoing and Prior Precedents , relevant to this case.

**Plaintiff, Pro Se**　　　　　　　　　　Nils Warren
Nils Warren　　　　　　　　　　　　　February, 28, 2023
3800 Wyldwoode Lane
Orlando Fl. 32806

*S./Nils P. Warren*
Nils P. Warren

**Certificate(s ) of Service:**
A true and correct copy of the charges within this complaint have been furnished to the defendants in this case:

NELNET
121 S. 13th Street
Lincoln Nebraska,68501
VIA COUNSEL:

**Daniel C. Johnson**
Attorney at Law I Carlton Fields
200 S. Orange Ave., Ste. 1000 I Orlando, Florida 32801-3456
Direct: 407.244.8237 I Fax: 407.648.9099

The Honorable Miguel S. Cardona
U.S. department of Education

400 Maryland Avenue SW
Washington DC, 20202

Plaintiff , Pro Se

*S./Nils P. Warren*

Nils Warren